IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LUMA HALIG, | * | |
| Plaintiff, | * | |
| v. | * | |
|  | * | Civil No. 22-2118-BAH |
| NATIONAL BOARD OF EXAMINERS OF OPTOMETRY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Luma Halig brought suit against Defendant National Board of Examiners of Optometry alleging that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* ECF 1. Pending before the Court is Plaintiff's motion for an order permitting Dr. Joshua Wolff and Jamie Axelrod to testify remotely, and confirming the Court's prior ruling regarding the admissibility of Dr. Wolff's evaluation and ruling that Plaintiff has a disability. ECF 91. Defendant filed an opposition, ECF 92, and Plaintiff filed a reply, ECF 93. The motion and opposition include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiff's Motion is **DENIED** as it relates to remote testimony and **GRANTED** as it relates to challenging the fact that Plaintiff has a disability as defined under the ADA.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I. Request for Remote Testimony

### A. Relevant Facts/Arguments of the Parties

Plaintiff asks the Court to permit two witnesses—Dr. Joshua Wolff and Jamie Axelrod, Plaintiff's expert witness—to testify remotely at trial pursuant to Federal Rule of Civil Procedure 43(a). *See* ECF 91, at 2–5. Defendant opposes Plaintiff's request. *See* ECF 92, at 3–5.

#### 1. Dr. Joshua Wolff

Plaintiff argues that "[i]t would be a hardship for Dr. Wolff to travel to Maryland for testimony in this matter given his professional responsibilities." ECF 91, at 2. Moreover, Plaintiff asserts that it would "present a financial hardship to [Plaintiff] to cover the costs of travel and expenses." *Id.* Plaintiff also notes that Dr. Wolff's evaluation and testimony is central to trial, but he has not been deposed, so "there is no deposition to introduce in his stead." *Id.* at 2, 4. Plaintiff attaches to her Motion as Exhibit 1 an affidavit from Dr. Wolff, vaguely addressing these constraints. *See* ECF 91-1, at 2–3. In his affidavit, Dr. Wolff states further that his "employer does not permit remote or telework except for official, employment-related reasons," so he would be "require[ed] to request formal administrative leave for all days of travel and [his] appearance, approval for which is not guaranteed." ECF 91-1, at 2 ¶ 6.

Plaintiff cites to Federal Rule of Civil Procedure 45(d)(1), which provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); ECF 91, at 2–3. Plaintiff also cites Rule 45(d), which provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)," Fed. R. Civ. P. 45(d)(3)(A)(ii)—namely, a subpoena which "command[s] a person to attend a trial" beyond "100 miles of where the person resides, is employed, or regularly transacts business in person," among

2

other constraints, Fed. R. Civ. P. 45(c)(1)(A). *See* ECF 91, at 3. Finally, Plaintiff asserts that remote testimony will not prejudice Defendant, "who had ample opportunity to depose Dr. Wolff, though they elected not to do so, and who has had" Dr. Wolff's evaluation, which essentially summarizes his relevant testimony, "since 2018." *Id.*

### 2. Jamie Axelrod

Plaintiff next argues that Mr. Axelrod should be permitted to testify remotely because he is "located in Arizona and traveling to Maryland to provide testimony would present a professional hardship to Mr. Axelrod, given his position at a university, particularly at this time of year." ECF 91, at 4. However, Plaintiff does not provide an affidavit from Mr. Axelrod affirming or explaining these constraints. Additionally, Plaintiff contends that Mr. Axelrod's in-person testimony would "present a significant financial hardship for [Plaintiff] who would be responsible for covering the costs of travel and lodging for Mr. Axelrod in addition to his fees for time spent testifying." *Id.* Finally, Plaintiff asserts that Mr. Axelrod's remote testimony "would not prejudice the Defendant, who had the opportunity to and did depose Mr. Axelrod, or impact the value of his testimony or the Court's ability to observe his demeanor or other visual indicators of credibility." *Id.* at 5.

### 3. Defendant's Opposition

With respect to both witnesses, Defendant argues that Plaintiff "has not presented good cause for introducing remote testimony at trial' because there are no "unforeseen circumstances or unexpected issues in this case" that would preclude the witness's live testimony. ECF 92, at 3. Defendant suggests that Plaintiff has articulated "at most mere inconveniences, not hardships." *Id.* at 5. For example, Defendant argues that "[t]he distance and cost of travel alone, as alleged here, does not warrant remote testimony by video absent some unforeseen circumstance." *Id.* at 4 (first citing *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 481 (2010); and then citing *Humbert v. O'Malley*, No. CIV. WDQ-11-0440, 2015 WL 1256458, at *2 (D. Md. Mar. 17, 2015)). As to Dr. Wolff,

3

who would be traveling from Chicago, Illinois, to attend trial, Defendant argues that the cost of a flight on the first and last day of trial is currently "affordable and would not place any financial hardship on [Plaintiff]." *Id.* at 4–5.

Additionally, Defendant emphasizes that the Court "issued the Trial Scheduling Order back in December 2024." *Id.* at 4 (citing ECF 73). Defendant asserts that Plaintiff's counsel knew about the trial date for nine months and thus "had months to secure [the witnesses'] appearances prior to trial," or otherwise "should have preserved their testimony via deposition, just like it has been preserved for other witnesses in this case." *Id.* at 3. However, "given that Mr. Axelrod was deposed" by Defendant, Defendant notes that "his deposition testimony could be utilized in lieu of live testimony because depositions 'provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena.'" *Id.* at 5 (quoting Fed. R. Civ. P. 43 advisory committee's notes to 1996 amendments).

**B.     Analysis**

"Federal Rule of Civil Procedure 43 governs the taking of testimony at trial." *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010). Rule 43 generally provides that a witness's "testimony must be taken in open court." Fed. R. Civ. P. 43(a). However, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id.* The decision to permit a witness to testify remotely is committed to the Court's discretion. *See United States v. Kivanc*, 714 F.3d 782, 791 (4th Cir. 2013).

"Although Rule 43 provides some flexibility in accepting remote testimony, it seems obvious that remote transmission is to be the exception and not the rule." *Lopez*, 748 F. Supp. at 479 (citing Fed. R. Civ. P. 43 advisory committee's note to 1996 amendments ("The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the

presence of the factfinder may exert a powerful force for truth telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.")). "[E]ven with the benefits that technology provides, substitutes for live testimony are necessarily imperfect." *Id.* at 479 (citing *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005)). However, "[d]espite videoconferencing's deficiencies, courts in this circuit and elsewhere have approved or affirmed its use in the civil context." *Id.* at 480 (collecting cases).

"The Fourth Circuit Court of Appeals has not stated a test for determining what constitutes 'good cause' or 'compelling circumstances,'" but the Advisory Committee Notes to the 1996 Amendments to Rule 43(a) provide some guidance. *Humbert v. O'Malley*, Civ. No. WDQ-11-0440, 2015 WL 1256458, at *2 (D. Md. Mar. 17, 2015). They state that "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendments.[2] Rather, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness." *Id.* "Other possible justifications for remote transmission must be approached cautiously. Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena[.]" *Id.* Moreover, "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances. Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known[.]" *Id.*

---

[2] *But see F.T.C. v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) ("[C]ourts are much more receptive to this new technology than the Advisory Committee. For example, while the Notes suggest that mere inconvenience to the witness is not a compelling reason for contemporaneous video testimony, one Circuit court has already suggested that geographical limitation is sufficient cause." (citing *Beltran-Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000))).

5

"The cost of international travel can provide good cause for contemporaneous transmission of testimony." *Lopez*, 748 F. Supp. at 480 (citing *Dagen v. CFC Grp. Holdings*, No. 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003)). And "[i]n some cases, travel cost and inconvenience have justified contemporaneous transmission even when the parties [were] located within the United States." *Id.* (first citing *Beltran–Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000); then citing *Scott Timber, Inc. v. United States*, 93 Fed. Cl. 498, 499–501 (2010); and then citing *Fed. Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000)). In *Lopez*, for example, the Court held that the travel expense to witnesses who otherwise would have had to travel from Honduras to Maryland constituted good cause, especially where those individuals made "no more than $7,000 a year." *Id.* at 480. However, the Court in *Lopez* remarked that it was "unconvinced that the financial expense of travelling from [Virginia or] Tennessee" warranted videoconferencing for other witnesses. *Id.* at 481. The court thus denied plaintiffs' request for "an order permitting contemporaneous transmission of testimony for all Plaintiffs 'outside a 100 mile radius of this Court.'" *Id.* (citation omitted); *see also Humbert*, 2015 WL 1256458, at *2 (noting that "conclusionary assertions" about a witness's work and family obligations nor "the financial expense of traveling from California merit[ed] contemporaneous transmission").

As to Plaintiff's request, the Court agrees with Defendant that the timing of the motion seeking to excuse live testimony is troubling, particularly in light of Plaintiff's stated reasons for the need for video transmission of the two witnesses' testimony. Plaintiff fails to assert any special need or unexpected occurrence that favors permitting remote testimony. Instead, Plaintiff asserts only that the cost of travel for the witnesses and circumstances related to their work obligations justifies their remote appearance at trial. But as the Advisory Committee Notes state, "[a] party

6

who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." Fed. R. Civ. P. 43(a) advisory committee's notes to 1996 amendments; *see also Ervin v. City of Austin*, No. A-23-CV-1113-ML, 2025 WL 1850966, at *2 (W.D. Tex. June 4, 2025) ("Moreover, the commentary . . . notes that where the circumstances offered to justify video transmission are *foreseeable*, a party will have difficulty showing good cause and the compelling nature of the circumstances." (emphasis added)). The witnesses' work constraints and anticipated travel expenses were or should have been known to Plaintiff in the over nine months since the trial date was initially set, if not well before. *See* ECF 73 (order setting dates for bench trial, docketed December 11, 2024).[3] This advance notice provided ample opportunity to provide for cheaper air travel and accommodations. As such, the present circumstances were foreseeable to Plaintiff, a factor the cuts strongly against permitting the witnesses' remote testimony.

Second, the Court is unconvinced that Plaintiffs have shown "good cause in compelling circumstances" as envisioned in Rule 43 with respect to the burden associated with either witnesses' travel to testify at trial. Dr. Wolff is traveling from Chicago, Illinois, to Baltimore, Maryland. *See* ECF 91-1, at 2. Dr. Wolff states in his affidavit that "it would not be feasible for [him] to travel to Baltimore, Maryland to testify in person as a result of the disruption travel would pose to [his] obligations at work, and the costs of travel that [he] would incur." *Id.* at ¶ 5. However, the Court is not presented with any detail as to what work obligations or specific costs make such

---

[3] The Court's December 11, 2024 Order notes explicitly that "[a]bsent *emergency circumstances*, a party will guarantee the presence at trial of any witness that party lists in the pretrial order[.]" ECF 73, at 2 (emphasis added). The reasons provided in support of remote testimony do not constitute "emergency circumstances."

7

travel infeasible, particularly if secured months in advance, when travel costs are much lower.[4] Further, Dr. Wolff's affidavit makes clear that he did not seek administrative leave to travel to Maryland for the trial, even though leave was apparently available, though admittedly, "not guaranteed." *Id.* at ¶ 6. Though the Court is sympathetic to the difficulties presented by travelling to provide trial testimony and any compensation for lost work that may result, these are concerns that present themselves in virtually every trial since witnesses often have to miss work or other obligations to provide testimony. Plus, given the frequency of flights between the two metropolitan areas, Plaintiff could have sought the Court's assistance in accommodating Dr. Wolff through a modified trial schedule, but chose not to.

With respect to Mr. Axelrod, this Court does not have an affidavit upon which to assess the circumstances related to his work and travel. And although the Court is sympathetic to Plaintiff's assertion that "covering the costs of travel and lodging for Mr. Axelrod in addition to his fees for his time spent testifying" present "a significant financial hardship" for Plaintiff,[5] this was obviously a risk known to Plaintiff when she secured Mr. Axelrod's services as an expert witness. Accordingly, the Court sees no reason to make an exception in this case to the rule that favors live testimony. *See Lopez*, 748 F. Supp. at 479 ("Although Rule 43 provides some flexibility in accepting remote testimony, it seems obvious that remote transmission is to be the exception

---

[4] Even if purchased today, a cursory search on several travel-booking websites reflect that it appears that round trip travel from Chicago to Baltimore and a hotel room for an evening can be purchased for less than $1,000.

[5] A similar search of travel booking websites reflects round trip airfare from Flagstaff, Arizona, the home of Mr. Axelrod's primary employer and presumably his home as well, to the Baltimore/Washington metropolitan area can be found for around $1,200. Flights from Phoenix are more affordable.

8

and not the rule."). Accordingly, the Court denies Plaintiff's motion for an order permitting Dr. Wolff and Mr. Axelrod to testify remotely.[6]

## II.   Dr. Wolff's Evaluation & Plaintiff's Disability

Plaintiff next argues in favor of the admissibility of Dr. Wolff's November 30, 2017 psychoeducational evaluation of Plaintiff. ECF 91, at 5.[7] In support, Plaintiff cites to the Court's prior memorandum opinion which held that "the authenticity and admissibility of Dr. Wolff's evaluation cannot fairly be disputed by Defendant." ECF 91, at 5 (quoting ECF 63, at 18 n.4). Plaintiff also argues that the fundamental question of whether Plaintiff is disabled under the Americans with Disabilities Act ("ADA") is settled by the Court's earlier pronouncement, in the context of summary judgment, that "it is clear that Plaintiff's conditions substantially impact one or more major life activities, and she is disabled under the meaning of the ADA." *Id.* at 7 (quoting ECF 63, at 24). Plaintiff reasons that because "[t]he Court's ruling on summary judgment is the law of the case, and applies to trial," *id.* at 7 (first citing *TFWS, Inc. v. Franchot*, 572 F.3d 186,

---

[6] To the extent Plaintiff cites the provisions of Rule 45 applicable to subpoenas, *see* ECF 91, at 2–3, the Court's ruling remains the same. Neither party claims that either witness is currently the subject of a subpoena, and neither party seeks to compel their testimony at the upcoming bench trial. Though Plaintiff hints that Dr. Wolff may seek to quash a subpoena and will not testify voluntarily, *id.* at 3, that exact issue is not before the Court. Regardless, Plaintiff waited until the last second to suggest the unavailability of both witnesses under Fed. R. Civ. P. 32(a)(4). Further, even assuming that both witnesses reside "outside the state in which the district court sits, and not within the 100–mile bulge," the "only remedy available to litigants, if the witness will not attend voluntarily, is to take his deposition[.]" *Guthrie v. Am. Broad. Cos., Inc.*, 733 F.2d 634, 637 (4th Cir. 1984). Plaintiff provides no explanation for what efforts, if any, were taken to secure the deposition testimony of both witnesses.

[7] The Court notes that Plaintiff previously filed a short motion seeking to "apply the Court's July 1, 2024 rulings on expert testimony to trial." ECF 74, at 1; *see also* ECF 76 (proposed order). In that motion, Plaintiff essentially repeats the Court's conclusions as they relate to the prior motions addressing expert reports and closes by asking that "the Court's prior rulings on the parties' experts should apply at trial, precluding testimony on any of the opinions deemed inadmissible, and permitting testimony only as to those opinions the Court found admissible in its July 1, 2024 Order." *Id.* at 3. Since no party asks to revisit the arguments previously addressed in the Court's July 1, 2024 memorandum opinion, and noting that this motion is unopposed, it will be granted.

9

191 (4th Cir. 2009); and then citing *Pitrolo v. Cnty. of Buncombe, N.C.*, 407 F. App'x 657, 659 (4th Cir. 2011)), Defendant is foreclosed from challenging the admissibility of the evaluation, *id.* at 6, and from making "any argument that Plaintiff does not have a disability under the ADA," *id.* at 7.

Defendant contends that Plaintiff "misconstrues the Court's Summary Judgment Opinion." ECF 92, at 2. "[C]ontrary to [Plaintiff]'s assertion in her Motion," Defendant argues, "this Court did not determine that Dr. Wolff's evaluation is admissible for the truth of [Plaintiff]'s assertion that she has a qualified disability under the ADA or for any other purpose." *Id.* at 6. Defendant asserts that it "sought exclusion of Dr. Wolff's evaluation on the narrow ground that Dr. Wolff was not identified and disclosed as an expert witness." *Id.* Further, Defendant contends that it merely "identified Dr. Wolff's evaluation in its motion for summary judgment and attached a copy as an exhibit, giving the Plaintiff the benefit of the doubt as it must in moving for summary judgment." *Id.* (citing ECF 36-1). As to Plaintiff's second argument that the issue of Plaintiff's disability is settled, Defendant asserts that "[i]n its motion for summary judgment, [Defendant] did not seek a ruling on whether Halig has a covered 'disability,' but rather for purposes of summary judgment only assumed, arguendo, that she has a covered 'disability,' thus reserving that issue for trial if the Court denied [Defendant]'s motion, which was based on other grounds." *Id.* at 6. "Given that the admissibility of Dr. Wolff's evaluation is subject to further objection and the Court did not deem it admissible for the truth of [Plaintiff]'s assertion that she has a qualified disability under the ADA," Defendant asserts that it can still challenge the admissibility of the evaluation and "the existence of [Plaintiff]'s alleged disability." *Id.* at 7.

### 1. Dr. Wolff's Evaluation

The Court concludes that Defendant may challenge the admissibility of Dr. Wolff's evaluation at trial. Although Defendant attached Dr. Wolff's evaluation to its own motion for

summary judgment, *see* ECF 63, 18 (citing ECF 36-6, at 2–40), Defendant later moved to strike the evaluation, ECF 51, and the Court ultimately denied Defendant's motion in its July 1, 2024 memorandum opinion, ECF 63, at 17–18. At the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[8] Fed. R. Civ. P. 56(c)(2). The Advisory Committee Notes to the 2010 Amendments further explain that "[i]f the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." It follows that Defendant's earlier and more narrow challenge to Dr. Wolff's evaluation at the summary judgment stage does not preclude it from challenging the admissibility of the evaluation at trial on other grounds.

Suffice to say that it is clear to the Court that Dr. Wolff's report is a key piece of evidence in the case as it was submitted to Defendant as justification for the requested accommodation at the heart of the case, and thus will be before the Court at trial for at least that purpose. Further, the report summarizes Dr. Wolff's conclusions as to Plaintiff's disability, a question of fact that the Court already ruled was not barred by the failure to disclose Dr. Wolff as an expert witness. ECF 63, at 17-18. In making that ruling, however, the only question before the Court was whether to "strike" Dr. Wolff's report for purposes of summary judgment. *Id.* And in denying that motion, the Court simply held that the report was not "testimony" as that word is defined in Black's Law Dictionary, was available to both parties, and thus could be reviewed as the Court addressed the pending summary judgment motion. *Id.* The Court's ruling was not intended to foreclose future

---

[8] Under the current Rules, there is "no need to make a separate motion to strike" to object to material cited in support of summary judgment, although Defendant did so in this case. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's notes on 2010 amendments.

11

challenges to the report—challenges that have already been raised by Defendant and preliminarily addressed by the Court.[9]

### 2. The Question of Plaintiff's Disability

Plaintiff argues that the Court has granted partial summary judgment on the question of whether Plaintiff is disabled within the meaning of the ADA. ECF 91, at 6. Calling this prior ruling the "law of the case," Plaintiff argues that Defendant should not be permitted to relitigate that issue. *Id.* at 7. Though cabined to a discussion of the challenge to Dr. Wolff's report, Defendant counters that it "can still challenge the existence of Halig's alleged disability[.]" ECF 92, at 7. The Court will address Plaintiff's motion as one seeking clarity on the question of whether Defendant can challenge the fact of Plaintiff's prior diagnosis of "Attention--Deficit/Hyperactivity Disorder ('ADHD'), Adjustment Disorder, and learning disorders in math and reading," ECF 63, at 2, and the fact that these conditions "substantially limit[] one or more [of Plaintiff's] major life activities," *id.* at 22 (citing 42 U.S.C. § 12102(1)(A)).

It is undoubtably true that in addressing the cross-motions for summary judgment, the Court concluded Plaintiff "is disabled under the meaning of the ADA." *Id.* at 24. However, that determination was based, at least in part, on Dr. Wolff's evaluation, the admissibility of which would be subject to further dispute, and the determination was made in the context of a ruling that ultimately denied Plaintiff's cross-motion for summary judgment, *see id.* at 2, 22–24.[10] In

---

[9] Of course, Defendant has already raised this challenge in a motion in limine filed on August 25, 2025. ECF 80. The Court preliminarily denied that motion at the telephonic pretrial conference on September 8, 2025, and will provide additional clarification on that ruling on the first day of trial.

[10] Likewise, the Court determined that "Plaintiff is otherwise qualified under the ADA." ECF 63, at 24–25. However, the Court could not grant summary judgment "[b]ecause disputes of material facts underlie the analysis of whether Plaintiffs requested accommodation is reasonable." *Id.* at 25.

12

response to Plaintiff's motion for summary judgment, Defendant conceded Plaintiff's disability status for purposes of summary judgment, but warned that this concession was "[f]or the limited purposes of NBEO's motion for summary judgment." ECF 50, at 11. However, Defendant also argued that though the "daily functions that [Halig] is limited or restricted in performing" are related to reading and math, "the videos of Halig's performance each of the three times she took the Part III Clinical Skills Examination demonstrate that Halig was not substantially limited in reading or math, or otherwise, and that she did not take longer to read or do math than most people, even under the broadest possible definition of reading and math." *Id.* at 12. Thus, Defendant's concession on this point was not really a concession as it raised fact-centered arguments countering Plaintiff's argument that she is disabled under the ADA.

To the extent the Court's July 1, 2024 decision may have left unanswered the question of whether the fact of Plaintiff's disability could be challenged at trial, the Court notes that neither party sought clarification on the issue. The Court also notes that Plaintiff did not seek, and the Court did not explicitly grant, *partial* summary judgment on that particular element of Plaintiff's ADA claim. *See* ECF 64, at 1 (denying both motions for summary judgment in their entirety). Thus, there is a strong argument that Defendant's right to challenge the fact of Plaintiff's disability survived the summary judgment stage. On the other hand, despite claiming to concede the point, Defendant raised the issue in response to Plaintiff's motion for summary judgment and pointed to facts in support of its position in the record, and the Court rejected the argument in making the decision memorialized in the July 1, 2024 opinion. Regardless, the Court need not wade deeper into this dispute over whether summary judgment was granted as to this element of Plaintiff's claim because Defendant has nonetheless waived that issue by failing to include sufficient details as to the contours of any challenge in the joint pretrial order.

The Local Rules clearly detail that the Pretrial Order must include "[a] brief statement of facts that each defendant proposes to prove or rely upon as a defense thereto, together with a listing of the separate legal theories relied upon in support of each affirmative defense." Loc. R. 106(b) (D. Md. 2025). "Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried." *McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 480 (4th Cir. 2002) (first citing Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendments ("[C]ounsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. If counsel fail to identify an issue to the court, the right to have the issue tried is waived."); and then citing *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1368 (11th Cir. 1988) ("[I]t certainly was well within the trial court's authority to require that objections be made in writing and to hold the parties to this requirement when the issues were joined at trial.")).

Both parties provided a "Statement of Facts and Legal Theories" in the joint pretrial order. *See* ECF 79, at 1, 7. In Defendant's statement of "Legal Theories," *id.* at 11, Defendant identified that "[t]o prevail under Title III of the ADA, Plaintiff must show that she: (1) is disabled; (2) was otherwise qualified academically to take the Part III Clinical Skills Examination; and (3) requested a reasonable accommodation that would not fundamentally alter the nature of and purpose of NBEO's Part III Clinical Skills Examination." *Id.* at 12. Defendant then wrote:

> Plaintiff's Title III claim fails because her accommodation request was not reasonable or justified because: 1) the requested accommodation was not necessary or justified based on Plaintiff's alleged disability; 2) the requested accommodation would have fundamentally altered the necessary nature of the Clinical Skills Examination; and 3) the requested accommodation would have posed a direct threat to the safety of the Standardized Patients.

*Id.* at 12. Beyond deeming Plaintiff's disability as "alleged," Defendant did not identify with requisite specificity that it was going to challenge Plaintiff's claim on the basis that Plaintiff did

14

not have a disability under the ADA, or how it intended to do that. To the contrary, Defendant provided notice that it intended to dispute that any accommodation was needed even assuming Plaintiff's disability, that the requested accommodation would fundamentally alter the CSE, and that the accommodation would pose a threat to the safety of mock patients participating in the CSE. *Id.*

Additionally, in Defendant's "Summary of Facts Defendant will Prove at Trial," *id.* at 7, Defendant included a section titled "Plaintiff's Alleged Disability," *id.* at 9. In that section, Defendant wrote:

> Plaintiff claims that she has ADHD, mood disorder and a learning disability in math and reading. The last time she received any disability-related evaluation or diagnosis was in 2017, when she consulted Dr. Joshua Wolff in connection with her request for an accommodation from the Illinois College of Optometry. *Dr. Wolff's evaluation does not indicate that he has any specialized knowledge of or experience with Optometry in general, or the Part III Clinical Skills Examination in order to properly recommend an accommodation for the Part III Clinical Skills Examination.*

*Id.* at 9 (emphasis added). Defendant framed its challenge to Dr. Wolff's evaluation as relating to Dr. Wolff's ability to "properly recommend an accommodation for the Part III Clinical Skills Examination," not as one alleging that Dr. Wolff was somehow unable to identify Plaintiff's disabilities and their impacts on her life. Indeed, this would be a herculean task given that it appears uncontested that Plaintiff sought – and received – accommodations on other parts of the certification exam due to her disabilities, and based solely on Dr. Wolff's report. *Id.* at 9. Accordingly, the Court concludes that Defendant has waived its ability to challenge Plaintiff's claim on the basis that she does not have a disability under the ADA.

In making this ruling, the Court notes that it is not preventing Defendant from arguing that "[t]he [CSE] did not require significant reading or math that would support a need for the accommodation requested for Plaintiff's alleged disability." ECF 79, at 12. Indeed, a challenge

15

to whether Plaintiff's disabilities made it such that her requested accommodations on the CSE were reasonable, and whether they would fundamentally alter the purpose of the CSE or endanger participants in that test, appears to be what the disputes in this case actually boil down to.

### III. Issues with the Remedy for an Alleged Violation of the ADA

The pretrial conference and the joint pretrial order have, however, raised a new concern: the remedy for any ADA violation. In the joint pretrial order, the Defendant notes that "the NBEO no longer offers the CSE and has replaced it with an entirely new PEPS Examination," and argues that the "[t]he Court cannot order NBEO to give Plaintiff additional time on the [CSE] because [it] no longer exists and it is impossible for NBEO to administer the CSE to Plaintiff or any other candidate." ECF 79, at 14. Further, Defendant argues that "the Court cannot issue an injunction related to the PEPS Examination because Plaintiff has not applied to take the PEPS examination or even requested an accommodation related to the PEPS Examination." *Id.*

Though the Court previously addressed this issue in the context of mootness, ECF 63, at 20–23, the issue has not been addressed in the context of what remedy is appropriate if the Court finds that Defendant violated the ADA in refusing to provide Plaintiff with her requested accommodations on the CSE. The Court notes that this issue is not ripe until, if ever, an ADA violation is found and thus does not believe that testimony or witnesses on this point are necessary or appropriate at next week's trial. In other words, if the Court finds a violation of the ADA, the question of a remedy may have to wait until after a subsequent proceeding that digs deeper into the PEPS examination, the reasons for the change to it (from the CSE), and the practicability of recreating the CSE.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion is denied as it relates to remote testimony and granted as it relates to challenging the fact that Plaintiff has a disability as defined under the ADA.

A separate implementing Order will issue.

Dated: September 17, 2025

/s/
Brendan A. Hurson
United States District Judge